# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | |
|---|---|
| BOBBY DANIEL PETTIE, ) | |
| ) | Case No. 4:18-cv-40 |
| *Petitioner*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge Susan K. Lee |
| RUSTY WASHBURN, ) | |
| ) | |
| *Respondent*. ) | |

## MEMORANDUM OPINION

Petitioner has filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, in which he challenges his convictions for initiating the manufacture of methamphetamine, promotion of methamphetamine manufacture, possession of a firearm during the commission of a dangerous felony, and possession of methamphetamine by asserting several claims for ineffective assistance of counsel [Doc. 1 p. 2, 5; Doc. 24]. However, after reviewing the relevant filings, including the state court record, the Court finds that the record establishes that Petitioner is not entitled to relief under § 2254. Accordingly, the petition for habeas corpus relief will be **DENIED**, and this action will be **DISMISSED**.

### I.     BACKGROUND

On June 26, 2012, Shane George, a police officer assigned to a drug task force in Shelbyville, Tennessee, saw a motorcyclist wearing dark sunglasses even though it was dark outside. Officer George believed the motorcyclist matched the description of a person a Dollar General employee had reported for making suspicious purchases of ammonium nitrate earlier that day. *State v. Pettie*, No. M2014-00113-CCA-R3-CD, 2015 WL 351229, at *1 (Tenn. Crim.

App. Jan. 28, 2015), *perm. app. denied* (Tenn. May 14, 2015) (*Pettie I*). Officer George was unable to obtain the motorcycle's license plate number because the tag was vertical, but, as he followed the motorcycle, he saw it weave within its lane, speed up, quickly slow down, and "abruptly move from the 'fast lane' to the 'slow lane'" in a manner that caused a vehicle in the slow lane to apply its brakes to "'make a safe distance from the motorcycle.'" *Id.* After seeing this, Officer George pulled the motorcycle over. *Id.* He identified Petitioner as the rider of the motorcycle. *Id.*

Petitioner told Officer George that he did not have his driver's license, as he had left it at his mother's house. *Id.* After explaining that he could arrest Petitioner for driving without a license in his possession, Officer George offered to follow Petitioner to his mother's house to resolve the issue, as he wanted to be certain of Petitioner's identity and make sure that Petitioner had a valid license and no outstanding warrants. *Id.* Officer George warned Petitioner "that he was not free to leave and any deviation from the route to his mother's house would result in his arrest." *Id.* Officer Jody Shelton then arrived at the scene, at which point Petitioner and the two officers drove to Petitioner's mother's house. *Id.*

When they arrived, Officer George and Petitioner walked towards the house, but Petitioner then stated that he may have left his license in his truck that was nearby. *Id.* at *2. As Petitioner searched for his license through the truck's driver-side door, Officer George aimed a flashlight through the passenger-side window to assist Petitioner and "to 'keep an eye' on" him. *Id.* There was a box containing a metal gallon container of Coleman camping fuel in the backseat, which Officer George considered suspicious because it is also used to manufacture methamphetamine. *Id.*

2

Petitioner then approached his mother's house to look for his license, at which point Officer George told Petitioner that he could do so only if he allowed Officer George to enter. *Id.* Petitioner opened the door and told Officer George that he could not permit him to enter, as it was his mother's house. *Id.* When Petitioner opened the door, Officer George smelled camping fuel and acid inside the house, which he associated with the manufacture of methamphetamine. *Id.* Officer George then grabbed Petitioner's arm and told him to step outside and sit on the steps. *Id.* Officer George then, in the presence of Officer Shelton, read Petitioner his *Miranda* rights. *Id.*

Petitioner denied manufacturing methamphetamine in the house. *Id.* Petitioner's truck was now locked, but Officer George used a flashlight to look inside and in the bed and observed two clear plastic garbage bags, one of which contained a green colored bottle "'pressed somewhat flat'" that had a hole in the cap, coffee filters with residue from filtering methamphetamine from oil, and a twenty-one ounce bottle that smelled of sulfuric acid and contained materials for making methamphetamine, all of which led him to conclude that the truck contained "a one pot or shake and bake methamphetamine laboratory." *Id.*

Officer George told Petitioner what he had discovered and that he was under arrest. *Id.* at 3. Petitioner explained that he had been staying with his mother for two weeks while he moved to Tennessee from Alabama, that he owned the motorcycle and truck, and that he had used the items in the truck to manufacture methamphetamine in Alabama before coming to Tennessee. *Id.* Officer George did not believe him and asked if he had anything in the house. *Id.* Petitioner told Officer George to look in a toolbox, at which point he and Officer George entered the house and obtained the toolbox, "which contained items commonly used in the [methamphetamine]

3

manufacture process." *Id.* Petitioner admitted that he owned the toolbox and the items therein. *Id.*

Petitioner also told Officer George about jars inside the house that were used in the process of manufacturing methamphetamine. *Id.* Officer George was able to obtain samples of substances from one jar and one vial, which he sent to the Tennessee Bureau of Investigation's ("TBI") laboratory for testing. *Id.*

Officer George also "found a loaded twelve-gauge shotgun under the rear passenger seat of [Petitioner]'s truck," as well as latex gloves in Petitioner's truck, clear tubing in a bucket outside the house, and "unopened cold packs containing ammonium nitrate with the Dollar General logo." *Id.* After Officer George collected the evidence and seized Petitioner's vehicles, he interviewed Petitioner and discussed the digital scales and plastic bags he had also found, which Officer George regarded as evidence that Petitioner was selling drugs. *Id.* Petitioner denied selling drugs or trading methamphetamine for boxes of Sudafed and stated that he produced drugs for his personal use and that his girlfriend purchased three boxes of Sudafed per month which was "enough for him to 'get by' just for himself." *Id.*

Petitioner also "admitted to using methamphetamine the previous day" and the day of his arrest and stated that he "thought drugs were 'cooked' inside" his mother's house, which Officer George thought was likely given the items he had seen and the odor in the house. *Id.* at 4. Petitioner also stated that he had removed a lid and finished methamphetamine from a jar when he entered the house, which he claimed was "'sloppy.'" *Id.* Petitioner stated that he made methamphetamine fifteen times in a thirty-day period when making it only for himself, but did so about thirty times in the same period when he and his girlfriend both used it, and that he paid non-drug users thirty dollars and drug users twenty dollars per box of Sudafed. *Id.* Despite

4

Petitioner's statements to the contrary, Officer George believed that Petitioner had manufactured methamphetamine in his mother's house.  *Id.*

Officer George did not issue Petitioner a citation during the traffic stop because he did not know what name to place on a citation.  *Id.*  Officer Shelton confirmed that he saw Officer George performing a traffic stop of Petitioner, and that Officer Shelton could not confirm Petitioner's identity based on a driver's license check through dispatch, as he could not display a picture of Petitioner.  *Id.*  He likewise confirmed that Officer George read Petitioner's *Miranda* rights to him and that Petitioner waived those rights, agreed to answer questions, and "admitted to possessing the components of a methamphetamine laboratory" to manufacture methamphetamine in Alabama.  *Id.*

Laura Cole, a TBI Special Agent, analyzed the two samples sent to the TBI from Petitioner's containers, concluded both were methamphetamine, and testified that the combined weight of the samples was "miniscule."  *Id.*

Based on this evidence, a jury convicted Petitioner of all charges against him [Doc. 16-1 p. 151–57], and Petitioner received an effective sentence of twenty-two years, eleven months, and twenty-nine days.  *Id.*  The Tennessee Court of Criminal Appeals ("TCCA") affirmed Petitioner's convictions, *id.* at *14, and the Tennessee Supreme Court denied Petitioner's request for permission to appeal [Doc. 16-11].  Petitioner then filed a petition for post-conviction relief [Doc. 16-12 p. 3–31; 37–41].

At the hearing on Petitioner's petition for post-conviction relief, Petitioner's original counsel testified that she reviewed Tennessee's "cite and release" statute, told Petitioner that it did not apply to him prior to the suppression hearing, and did not make this argument because she did not think it was the "'best argument.'"  *Pettie v. State of Tennessee*, No. M2016-01838-

5

CCA-R3-PC, 2018 WL 1091882, at *2 (Tenn. Crim. App. Feb. 27, 2018) (*Pettie II*). Instead, she chose to argue that Petitioner did not have authority to consent to the search of the house. *Id.*

Petitioner's original counsel also testified that she advised Petitioner that if he went to trial, he could face a charge for unlawful possession of a firearm. *Id.* She also advised Petitioner to take a plea deal under which the state offered Petitioner an eight-year sentence as a Range 1, standard offender, which she thought was generous, as Petitioner qualified as a Range II, multiple offender based on his Alabama convictions, of which it appeared the state was not aware. *Id.* However, Petitioner rejected that offer and ultimately fired her the day before his trial was scheduled to begin after she conveyed a final plea offer. *Id.*

After Petitioner fired his original counsel, the prosecution filed a new indictment against him that added charges for simple possession and unlawful possession of a firearm. *Id.* Petitioner's trial counsel did not file a motion to dismiss this indictment because he did not believe there were grounds to do so. *Id.* Specifically, trial counsel testified that any delay in the criminal proceeding was due to Petitioner firing his counsel the day before his scheduled trial and that, at the time of the first indictment, the state did not know of Petitioner's Alabama convictions, "and arresting officers had not told the prosecutor about the shotgun." *Id.* However, Petitioner testified that he believed the state filed the new indictment against him because he fired his original counsel. *Id.*

Petitioner's trial counsel, who also served as Petitioner's appellate counsel, also testified that he researched the trial court's use of Petitioner's Alabama convictions to increase Petitioner's sentencing range in preparing Petitioner's appeal of his convictions and found that the trial court's decision to do so was proper. *Id.* at *3. However, trial counsel tried to argue that the police stop of Petitioner was improper under Tennessee's "cite and release" statute even

6

though the issue had not been raised in the suppression motion or the motion for new trial, and the TCCA found it had no merit. *Id.*

The post-conviction court denied the petition after a hearing [Doc. 16-12 p. 46–56; Doc. 16-13], and the TCCA affirmed. *Pettie v. State of Tennessee*, No. M2016-01838-CCA-R3-PC, 2018 WL 1091882 (Tenn. Crim. App. Feb. 27, 2018) (*Pettie II*). Petitioner did not seek permission to appeal this decision from the Tennessee Supreme Court.

Now before the Court is Petitioner's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he asserts several claims for ineffective assistance of counsel [Doc. 1], and in support of which he filed a statement of facts [Docs. 9, 24]. Respondent filed a response in opposition thereto [Doc. 17], as well as the record from the state proceedings [Doc. 16]. Petitioner filed a motion to file a reply to Respondent's response [Doc. 18], which the Court granted [Doc. 19], and Petitioner also later filed a motion for extension of time to do so [Doc. 20]. However, Petitioner ultimately withdrew this request by stating that he could not prepare a reply within the required time period due to his own failure to begin preparing until the last minute [Doc. 21 p. 2].

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2254, *et. seq.*, a district court may not grant habeas corpus relief for a claim that a state court decided on the merits unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

7

28 U.S.C. § 2254(d)(1)–(2).  The § 2254(d) standard is a hard standard to satisfy.  *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)).  When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts that presumption with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

### III.  ANALYSIS

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  This includes the right to "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.  A petitioner has the burden of proving ineffective assistance of his counsel.  *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms."  *Strickland*, 466 U.S. at 688.  A party asserting an ineffective-assistance-of-counsel claim must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional

8

judgment." *Id.* at 690. Evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

The Supreme Court has emphasized that a claimant must establish both prongs of a claim for ineffective assistance of counsel to meet his burden, and if either prong is not satisfied, the claim must be rejected. *Strickland*, 466 U.S. at 69. Moreover, a habeas petitioner alleging ineffective assistance of counsel bears a heavy burden, given the "doubly deferential" review of a such a claim under § 2254(d)(1). *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

### 1. Actively Advocate

Petitioner first asserts that "counsel failed to actively advocate on [his] behalf in order to protect his . . . constitutional rights provided by the Sixth Amendment, the Eighth Amendment, and the due process guarantees of the Fourteenth Amendment" [Doc. 9 p. 1]. However, in support of these claims, Petitioner sets forth general facts about the criminal proceedings against him and does not specify what acts of counsel were deficient or what prejudice resulted from any of the counsel's acts [*Id.* at 1–3].

To the extent that Petitioner seeks to challenge his trial counsel's failure to object to the new indictment against him that added charges for possession of a firearm and simple possession, he has not established that his counsel was ineffective. The TCCA specifically found

9

that this claim had no merit, as the state had probable cause for the new charges against Petitioner. *Pettie II*, at *6.

In this action, Petitioner does not dispute the TCCA's finding that the state had probable cause for the additional charges against him, nor has he alleged or established that his trial counsel's decision not to challenge the new indictment against him was unreasonable, that this omission prejudiced him in any way, or that the TCCA's decision to deny him relief on this claim was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented. As such, Petitioner as not met his burden to establish that he is entitled to relief under § 2254 for this claim.

### 2. Sentence

Petitioner next alleges that his appellate counsel was deficient for not arguing that he should have been sentenced as a Range I offender, rather than as a Range II offender [Doc. 9 p. 3]. Specifically, Petitioner alleges that his attorney argued to the trial court that Petitioner should be sentenced as a Range I offender because there was no proof as to how his Alabama convictions for burglary would be classified under Tennessee law, but failed to present this argument in Petitioner's appeal [*Id.*].

The TCCA found that this claim lacked merit because Petitioner failed to present any evidence that his sentence was in an incorrect range, and his counsel testified at the post-conviction hearing that he had researched the issue and found that Petitioner's sentence was in the correct range. *Pettie II*, at *6. Petitioner has offered nothing from which the Court could determine that this was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented. Rather, Petitioner generally alleges

10

that counsel was ineffective as to this issue without citing any support for the assertion that his sentencing range was incorrect. As such, Petitioner is not entitled to § 2254 relief for this claim.

### 3. Motion to Suppress

Petitioner's next claim is that his counsel failed to properly litigate a motion to suppress evidence based on the Fourth Amendment [Doc. 9 p. 4]. Petitioner specifically alleges that his original counsel thought the best argument for suppression of evidence was that he was an Alabama resident without authority to consent to a search of his mother's house but failed to present any supporting evidence at the suppression hearing, did not meet with him for more than a month prior to that hearing, and did not allow him to testify [*Id.*].

The TCCA found that Petitioner was not entitled to relief for this claim due to his failure to present evidence of any prejudice resulting from his original counsel's failure to present witnesses and because the evidence did not preponderate against the post-conviction court's finding that Petitioner's original counsel was adequately prepared for the hearing. *Id.* at *5.[1]

---

[1] To the extent that Petitioner raises new claims for ineffective assistance of counsel in his petition that go beyond arguments he presented to the TCCA in his appeal of the denial of his post-conviction petition [Doc. 16-15], such claims are not cognizable in this action. Specifically, before a district court may grant habeas relief to a state prisoner, the prisoner must exhaust all of his available remedies in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365–66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. A petitioner who fails to raise his federal claim in the state courts and cannot do so now due to a procedural rule has committed a procedural default that forecloses federal habeas review unless the petitioner shows cause to excuse his failure to comply with the procedural rule and actual prejudice from the constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner has not shown cause to excuse any default or prejudice resulting from any default in his petition. Thus, the Court is only addressing claims in the § 2254 petition that Petitioner properly exhausted.

11

Petitioner has failed to allege, much less establish, that this was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented and therefore is not entitled to § 2254 relief for this claim.

### 4. Cite and Release

Petitioner also states that his original counsel went over the Tennessee "cite and release" statute with him and decided not to present this argument because Petitioner did not have his driver's license when stopped. He asserts that his second trial counsel (who was also his appellate counsel) raised this argument for the first time on appeal of his convictions without setting forth supporting facts in violation of the applicable rules and completely abandoned his original counsel's suppression arguments [*Id.*]. Petitioner argues that the TCCA made an improper determination that this statute did not provide a defense to him [*Id.* at 4–5].

The TCCA denied this claim by noting that it had previously found that Tennessee's "cite and release" statute did not apply to Petitioner, as his original counsel did, and that this claim was therefore without merit. *Id.* To the extent that Petitioner argues that this was an incorrect determination of Tennessee law, that claim is not cognizable herein. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (providing that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus") (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Moreover, Petitioner has set forth nothing from which the Court could determine that the TCCA's denial of this claim was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented. Thus, he is not entitled to § 2254 relief for this claim.

### IV. CONCLUSION

For the reasons set forth above, Petitioner's petition for § 2254 relief will be **DENIED** and this action will be **DISMISSED**.

V.  **CERTIFICATE OF APPEALABILITY**

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

Reasonable jurists could not conclude that Petitioner has made a substantial showing of a denial of a constitutional right with regard to his claims for ineffective assistance of counsel such that they would be adequate to deserve further review. Accordingly, a **CERTIFICAT OF APPEALABILITY SHALL NOT ISSUE.** Also, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER.**

**ENTER:**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

13